Good morning, may it please the court. Amanda Allen on behalf of Mr. Duane Berry. There are two undisputed facts here. Mr. Berry's charges were dismissed in December of 2019, and five months later the government decided to certify Mr. Berry, and the only provision under the civil commitment statute Mr. Berry could have been certified under is unconstitutional. But before I address the constitutional argument, I want to talk about why this case is properly before this court, because the government sent so much of its briefing on this issue in only about one paragraph on the constitutional issue. The government has two arguments as to why this issue is not before this court properly. The first one they lead with is judicial estoppel, and the second is waiver. For judicial estoppel, the government has to show that Mr. Berry would have relied on the statement in the pre-trial order stipulation that he was undergoing competency restoration to his advantage. What do you want us to do for this felon? Your honor, we would like that we ask that the court that Mr. Berry be ordered released and to vacate the district court's judgment. Order is released. Yes, your honor. Even though he's dangerous? Your honor. To the public and himself. There was no finding that he's a danger to other people. He's certified as dangerous. He was certified as dangerous, and there are two. He's certified as dangerous. On the merits, and there are two ways an individual can be certified as dangerous. Here, the district court found there was not a clear and convincing evidence or enough of a nexus. Are you talking about the district court you mean? The eastern district. Judge Myers, eastern district of North Carolina. The district court. Judge Myers made the decision in 2024, but Judge Britt had already ruled on it in 2022. On the delay issue, the five months that you're talking about. He found it was reasonable. So I guess two issues that you bring up, your honor, that I would like to respond to. With Judge Britt, that was at the motion to dismiss stage, and I certainly plan on addressing that. This is not a typical delay case that the fourth circuit has seen prior. Here we have a clear end deadline of December 17th, 2019 when the indictment was dismissed. As far as dangerousness, the district court found that there was clear and convincing evidence to support a dangerousness to property, but there was not enough of a nexus to establish dangerousness to others. Make a 42-46A valid, 42-46A certification. You have to find, well, one of the things you would have to find was that the defendant had been committed to the attorney general pursuant to 41D, and then that requires findings. This follows up with on Judge King's question. I thought that the certification here under this provision required findings that the individual both suffered from a mental disease and that his release would present a substantial risk of bodily injury or serious property damage. Did the district court make those findings? The district court made all the findings except with respect to a substantial dangerousness to others. The finding was based off of the property, which was based off of ... The statute permitted serious damage to property as a basis. It does, Your Honor. It says or. It does, Your Honor. I just want to make clear that the finding here was about property and not dangerous to other people. The ruling satisfied the statute. The law controls this. Your Honor, the judge did make a finding for the merits. The judge ruled that it was reasonable. Specifically, the time period that elapsed was reasonable. On the motion to dismiss stage, Your Honor, he did, but we appealed because that was incorrect for the reasonableness determination. The reasonableness finding is incorrect. That's correct, Your Honor. Correct, Your Honor. Okay, and we would ... Your challenge to that, we would review for clear error? Correct, Your Honor. The certification here requires that the defendant has been committed to the custody of the Attorney General pursuant to 41D. That was in fact the case, and then after that point, and after that point, the district court has to make findings about a serious risk. You're asking us to say that the district court's findings that if released, this individual would present a serious risk to bodily injury or serious property damage? Do we somehow imply that these findings were incorrect? I think we skipped a couple of steps, Your Honor. Mr. Berry's argument is that he was not in the Attorney General's custody under 4241D. You've argued legal custody? He is not in the federal government's legal custody under 4241D or under the third category that allows the government to certify an individual after charges have been dismissed. There's three categories to this. Yes, Your Honor. I'm talking about category number two, a person who has been committed to the custody of the Attorney General pursuant to 4241D, and I don't want to add a gloss to this statute and try to put in something that's not there because looking at the plain language of the statute, it says has the person been committed to the custody of the Attorney General, and as I understand it, I mean I understand the charges were dismissed, but the statute itself just says has the person been committed to the custody of the Attorney General pursuant to 4241D, and then findings, at that point, findings are made whether the individual presents a serious risk in the manner that you and I have discussed, and that seems to me, I mean there are ways to try to to complicate it, I suppose, but it seems to me just reading the statute, only one of those three conditions need apply, and it seems the most logical one is condition number two. That's, Your Honor, where we respectfully disagree. You say it's not number two? Correct, Your Honor, it's not number two. The Attorney General custody period expired at the very latest on December 17th, 2019. Now, the statute doesn't talk about that. It talks about has been committed. It doesn't put a lot of conditions on that. It says has been committed to the custody. Now, you argue that, oh well, that must mean legal custody, but I think the Supreme Court has said a number of times that the word custody is most naturally read to mean physical custody. Not in this context, Your Honor. In U.S. v. Joshua, a published case before this court, the court acknowledged that there is a difference between physical and legal custody, and in that case, U.S. v. Joshua, a Fourth Circuit published case. Are you familiar with Curbo? Are you familiar with Curbo? Yes, Your Honor. Yes, Your Honor. In Joshua, this court acknowledged there's a difference between legal and physical custody, and in the context of 4248, the court interpreted custody to mean legal custody, and I think that's what naturally the language of the statute has to mean here. In Comstock, this court has talked about and why the constitutionality of individuals who are in the custody of the federal government, therefore upheld as constitutional under the Necessary and Proper Clause. Do you want to get to your constitutional question now? Yes, Your Honor. And that's under what constitutional provision? So the third category, the only category Mr. Berry could have been certified under here is unconstitutional under the Necessary and Proper Clause, Article I, Section 8, under the Tenth Amendment. You ever heard of Eichwander? How do you get around Eichwander? Your Honor, I'm not familiar with Eichwander. That's the constitutional avoidance doctrine. If the case is resolvable on a non-constitutional ground, we don't mess with constitutional questions. We're not to reach constitutional questions. That's Eichwander. That's the principle of the Eichwander Supreme Court case. And I am familiar with constitutional avoidance. Should this court not want to decide the constitutional issue? The constitutional avoidance is we don't address the constitutional question unless we have to. And here he's in custody under that Section 2 as Judge Britt upheld in 2022 and as Judge Britt was upheld again in 2024. If the court decides not to address the constitutional issue, Mr. Berry can still be successful in his claim because waiting five months to file the certificate was unreasonable. Whether the court determines that Mr. Berry was under 4241D custody, which Mr. Berry was not, that period had expired. In any event, waiting five months was unreasonable. And under the third category of post-dismissal certification, waiting five months was also unreasonable here. But Judge Britt said it was reasonable. He found it was reasonable in 2022. He said the five months, the four-month provision, they explained everything about him getting transported from the one prison lockup to finally got over here to Butler and the examination at Butler that resolved that he was dangerous. And it was accomplished in five months and was found by the district judge to be reasonable. And that finding is binding here. Your Honor, the court can review the district court's finding under clear error. And here, even acknowledging some diminished missed time period has to happen between the restorability determination and when the certificate is filed, the window should be a little bit, a lot tighter when there are no charges pending against this individual and they are no longer in the legal custody of the government. Here, the government knew that it was going to dismiss the charges against Mr. Berry. The government decided... How does that link up with the statute? I mean, the statute doesn't... The second condition in the statute, you've talked un-understandably about expiration dates and dismissed charges and all of that. And you say, well, in this case, the charges were dismissed and the lawful custody would have expired by this and that. But I just don't... I see the problem there is we're trying to add gloss to the statute. Congress could have put in provisos about dismissed charges and expiration dates and everything, but it said, you know, that's not what the statute reads here. It all says is that he has been committed, which this individual has been committed to the custody of the Attorney General. And then after that, there have to be findings that have to be made. The statute is a highly reticulated statute and it requires... And there are also ways of seeking release where if the director of Butner or whatever certifies the individual is no longer dangerous, that goes a long way to a release. But what you're asking us to do, it seems perilously close to short-circuited, a very carefully reticulated scheme that Congress has set up for individuals like this. I can't understand what they did. What this individual was leaving around were things that looked a great deal like bombs. And, you know, these are ever-present concerns for large numbers of citizens. And I'm just very nervous about being asked to play around with some of the language in this particular statute. This whole set of provisions was very, very carefully thought out. Your Honor, the last thing I'll leave you with, unless there's any other questions, is this Court's precedent in U.S. v. Carrington and U.S. v. Searcy has decided that when you're looking at civil commitment, there must be a clear start and end date for when the government decides to certify somebody. In fact, in Carrington, this Court, Judge Richardson said that when the government files a certificate after the custody period has concluded, the individual can file a the government abide by the statutory requirements of start and end times here to avoid the issue of an individual who's been deemed mentally incompetent to be held for a near indefinite amount of time. We ask that the Court vacate the District Court's judgment. Thank you. You have some rebuttal time as well, so you save that. Thank you, Your Honor. Ms. Petrie, we'd be happy to hear from you. Good morning, Your Honors. Jenna Petrie for the United States of America. May it please the Court. Mr. Berry's counsel spent a good deal of time talking about why he should not fall under the 4241D prong of 4246A. But, Your Honors, that's a misleading argument that will take us in the wrong direction in analyzing this case because what Mr. Berry is asking you to do is to ignore the decision of the lower court, to ignore the meticulous analysis offered by Judge Britt, to ignore the Chief Judge Myers that Mr. Berry is a dangerous person, and to ignore Mr. Berry's own waiver and stipulation to the fact that he was subject to 4246A as a person who had previously been committed to the custody of the Attorney General under 4241D. And so what I would ask this Court to do today is to affirm the decision of the lower court. As Your Honors aptly noted previously, 4246A is a must be met in order for a person to be certified as mentally ill and dangerous. It is the most logical, Your Honor, and it's the most logical for a few reasons. Absolutely, Your Honor. It's the only prong the government has consistently argued throughout. And I would note that Mr. Berry himself only ever mentioned the constitutionality of that third prong in one paragraph in his motion to dismiss. And so he also did not heavily rely on that prong either. And the reason that the second prong of 4246A is the most obvious is because beginning on December 5th of 2019, Mr. Berry was at FMC Fort Worth in Texas undergoing competency restoration pursuant to 4241D. He was there at the time that the court ordered the 4246A. Did you say December the 5th? December the 6th, Your Honor. December the 6th. The 5th. I apologize. December the 5th of 2019, Mr. Berry arrived at FMC Fort Worth to undergo competency restoration. And we see that in the joint appendix as part of his history of movement within the Bureau of Prisons. And so we know that that's the date that he arrived at FMC Fort Worth to undergo 4241D competency restoration. He was there on December the 17th when the court, the Eastern District of Michigan, ordered him to undergo that 4246 evaluation. Now the problem of course there is that FMC Fort Worth does not have the staff capable of doing a dangerousness evaluation. It's simply that those psychiatrists and those psychologists, they specialize in competency restoration, not in dangerousness, which as this court knows from United States versus Curbo, are two entirely different analyses. And so Mr. Berry needed to be moved. He needed to be moved to a facility that was capable of doing a dangerousness evaluation, of which, as we can see from the records, there were only three in the Bureau of Prisons at that time. He was ordered to undergo this dangerousness evaluation at the Federal Medical Center in Butner, North Carolina, where he had not been since 2017. And so even though the evaluator who had previously worked with him was still there. Yes, a little bit, Your Honor. And I think the court aptly noted in the oral argument during United States versus Carrington that if there's no room at the inn, unfortunately there's no room at the inn. And that was true here because there are only a few facilities in the entire United States capable of doing these type of mental health evaluations. And as I noted for the court, there were only three in the entire United States at the time capable of doing both competency restoration and dangerousness. And that's the medical center in Butner, the medical center in Springfield, Missouri, and the medical center in Devins, Massachusetts. And so there was a bit of a backlog. I mean, a civil commitment is a sensitive issue because we normally think of confinement as something that follows on the heels of a criminal trial. And committing anybody without a trial is not something that you do casually. And when you look at this statute, you see that Congress was concerned about that very thing. And it didn't want commitment to be undertaken, you know, haphazardly or whatever, or to replace the criminal justice process as the normal means for depriving someone of their liberty. But Congress approached this in a very responsible spirit and set forth this scheme. And the bottom line of it is that, fine, we need to find out who's truly dangerous. And to prevent the release of people who've been adjudicated to be seriously dangerous, we don't want them released into the general population. And that's what we have here, that we would be running a serious risk, somebody who's plainly imbalanced, and to release that individual into the general population over the findings of Judge Britt, who's a very careful district judge, that would be a fairly rash step. I agree, Your Honor, certainly. And I think this court beautifully explains the legislative... The point is, nobody's being casual about this stuff. Certainly not, Your Honor. And the government, by no means, was casual in this either. Now, while a lot of the actions that happened in this case happened before United States versus WADA was even heard by this court and argued, all of the factors that were considered by Judge Britt in making his decision on the motion to dismiss on March the 31st of 2022 did encapsulate not only WADA, but also CURBO. And so what WADA and CURBO tell us is that analyzing whether or not the government was reasonable in the time it took to certify a person, that the government must strive to certify a person in a manner that eliminates or at least minimizes the time that the person spends in custody waiting a determination on civil commitment. Now, it reminds us that this time period should not be so short as to not afford the government time to adequately assess a person's dangerousness, but it obviously shouldn't be so long as to allow a person to languish in a mental health hospital. But what's most important about this and what distinguishes this case from United States versus WADA is that Judge Britt noted that the government has offered, as required, an explanation of the physical, the behavioral, and the administrative obstacles that took place in the certification process that resulted in the time period that it took to certify Mr. Berry. And Judge Britt does a beautiful job, I think, of analyzing those here. But just to remind this court, at the time that Mr. Berry was ordered to undergo the 4246 evaluation, as I noted, he was at FMC Fort Worth in Texas, and that was on December the 17th of 2019. For some reason, perhaps the holiday season, the Bureau of Prisons did not get a copy of that court order until January the 8th of 2020, at which time they immediately designated Mr. Berry to the Federal Medical Center in Butner, North Carolina. Now then, of course, he needed to be moved to that facility by the marshals. And as we've already discussed a little bit, there was a bed space issue at that time where there was a high need for mental health care and not a lot of beds. And the reason for that, of course, is that we need to house mental health individuals or people suspected of having mental health problems in a safe manner. We can't be putting them in bunk beds in a gym. We can't have them sleeping in the hallways. They need to be somewhere where they can be safe and confined and to receive the medical care that they required, which is why Mr. Berry remained at FMC Fort Worth while he was waiting. 46A certifications, I mean there was a delay here, but the staff shortages at Butner and the bed shortages at Butner have been publicized, or at least I've been aware of them. It was clear that the institution had bed shortages and staff shortages, and it was dealing with a very long waiting list and was trying to contend with COVID-19. And so you're worried about unreasonable delay in the 46A certifications, but given the conditions at the time at Butner, as I say, which were generally of public knowledge, that you can understand why it would take a little bit. There just aren't enough beds, and there are not enough staff people, and there are shortages. Absolutely. And that happens. It does, Your Honor, and I certainly hope that this Court understands that. It was in the pandemic too. It was. So Mr. Berry arrived at the Medical Center of Butner on March the 18th of 2020, which as we all know was right at the start of the pandemic. You said there were three places they did these exams, and Judge Britt was told there were two. Yes, I believe that Judge Britt was focusing on the two places that were conducting competency restoration, and that was specifically at the time. Fort Worth was one of them. It was a very small operation, but Butner and Springfield. He quotes the government. Absolutely. When I was telling him there were, Butner was only one of two. That's for competency restoration. Yes, Your Honor. That was the part when the government was explaining to Judge Britt why there was this delay. Yes, Your Honor, and that was for the competency restoration piece. However, the dangerousness assessment could also be conducted at FMC Devins during that time, certainly further away from Texas than FMC Butner was, and Mr. Berry had previously been at FMC again in 2017, but as this court noted, the COVID pandemic did begin in March of 2020. FMC Butner had four evaluators. They now have, I believe, nine, and so that shows us just what they were working with at that time. Dr. Lloyd, who was assigned to Mr. Berry's case, was carrying a caseload of between 25 and 35 restoration and dangerousness assessments at that time and was assigned to Mr. Berry's case, and of course she had to re-acclimate herself with his case. I think you set out a lot of these arguments in your brief. Yes, Your Honor. I'm going to ask my co-panelists at this point whether they have further questions of you. Judge King, do you have further questions? I want to ask one question. Sure. One further question. Judge Britt found and extended, in his opinion, the time period that elapsed was reasonable. Therefore, Respondent's motion will be denied. Is it the government's position that that resolves this case? Yes, Your Honor. I believe that that resolves this case. I thought that would be your answer. And even if it does not, that issue was never again raised by counsel throughout the of his 42-46 commitment process and it was never raised at the hearing. That time period that he's referring to is about approximately five months? Approximately five months, Your Honor, yes. As far as you're concerned, that's the case? That's the case. No questions. Thank you, Judge. Thank you so much. Thank you very much. Thank you, Your Honors. I thank you. Ms. Allen, we're happy to hear you in Roboto. Your Honor, for Roboto, I want to talk about three issues. The first being that my colleague on the other side said that the government consistently argued that Mr. Berry fell into the second category, attorney general custody. That's incorrect. In the Eastern District of Michigan, when the government filed its motion to dismiss the indictment, the government said that it thought that Mr. Berry fell into the third category of post-dismissal under 42-46A. Even before the charges were dismissed? The government filed the motion to dismiss the indictment and the motion to send Mr. Berry off to an assessment under 42-46 at the same time. And at that time, the government said that it was the third category that applied. Is it that the third category would apply once the motion to dismiss was granted? Were you saying? Yes. Yes, Your Honor. At least that's what I understand the government would have meant. Then in the Eastern District of North Carolina, the government in its briefing below argued that Mr. Berry fell under two categories, the attorney general custody and under category three of post-dismissal. And then on appeal, the government has now focused on the second category of attorney general custody. So the government's arguments about what category Mr. Berry has fallen under has been inconsistent. I want to pick up where Judge Keene had left off that it was a slow-moving process on the reasonableness analysis for Mr. Berry. And it was unreasonable considering what the government knew and when. As early as December 2016, the government had Mr. Berry's PSR, criminal history, Dr. Lloyd's analysis, Dr. Sconce's analysis, or competency assessment from earlier. At that point, the government could have filed a certificate and it did not. A certificate only needs to meet Iqbal and Twombly standards because we're in a civil context here. The government instead waited until May 21st of 2020 to file a certificate. Given that the clear error applies here, if you could just concisely address what makes the judges, the lower courts determination of reasonableness clear error. Is it just really the totality of everything that you've placed on the table or is there anything in particular that you think makes this clear error? It's clear error considering the facts of this case that the government just simply chose not to and has not provided an explanation why it did not file a certificate earlier, especially considering this court's precedent that there must be clear start and end dates for the purposes of civil commitment under U.S. v. Searcy and Carrington. And that's why there's clear error here and especially considering where the discharges against Mr. Berry had been dismissed. There, I think, are consequences of a ruling that an individual who remains incarcerated beyond the dismissal of their charges can at some point become indefinitely and civilly committed. And that's something that the U.S. Supreme Court has said is unconstitutional. And here, Mr. Berry is not any charges any longer and is no longer in the legal custody of the federal government. The government also had said that there was waiver of the constitutional issue. There was not. The argument about what category Mr. Berry fell into... Where in the statute are these provisos listed?  Expiration dates and dismissal and all the rest. I don't see them there. I wonder whether I just... My concern is that we're simply elaborating upon a statute well in excess of what Congress actually provided there. I think two things that can give the panel comfort about the interpretation of the statute here. Under the statute, there's an initial four-month period that has a clear end deadline and then you get additional reasonable time after that, which is if the court finds a substantial probability that you can be restored during this initial time period or when the charges against you are disposed of, whichever is earlier. Here, the charges against Mr. Berry were disposed of even if the court were to consider he fell under the Attorney General custody. Were disposed of in December of 2019. I think the textual perspective would highlight a difference between what the statute says in terms of the person having been committed to the custody of the Attorney General versus the way that you're interpreting it. What would be more fitting would be is committed or just a different tense to that verb. Because I think the concern here is that it's clear that this defendant had been committed to the custody of the Attorney General pursuant to 4241D, correct? You can pick up from there. But that period had expired, Your Honor. That's our argument. I don't think there's any discongruence in the interpretation of statute and what we are saying. We're arguing that the 4241D period expired. If the court's considering Mr. Berry in the D period, then the additional... Four months? That's a separate issue here. Here, we're assuming that we fall into the second category of additional reasonable time period. The charges were disposed of on December 17, 2019, thereby concluding the Attorney General custody period. And under Category 3, that period also expired because the indictment had been dismissed for reasons of Mr. Berry's mental illness. I mean, we're having a very interesting discussion here, but I'm just not sure I see that that I see it in terms of a statute. That's the problem. But anyway... I have one additional question, Judge. Absolutely. So the three categories, is it your contention that you can only fall into one or is it possible to fall into multiple of the three categories, 4246? Your Honor, I suppose there's a world in which somebody could fall under more than one category. That wasn't kind of specifically an issue in this case because Mr. Berry only fell into one category. The only category he could have been certified under, which was the third, his charges had been dismissed against him. But he had also been committed. I know we have a different reading of that provision, but I mean, if you just look at the plain language of the statute, he had been committed. But even under the second category, Your Honor, if we fall into the additional reasonable time period under D2, you only get the additional reasonable time period if the district court makes a finding that in that additional time period, you could be restored. That didn't happen here. So it has to be part two of that, which is charges were disposed of. And here, those charges were disposed of and WADA, the court, has said that disposed of means dismissal. So you want to read the time limitations that are in 4241D and import them into 4246A? Not necessarily, Your Honor. I guess there are two different issues. So 4246A gives you the three categories, one being the attorney general custody category. And if we look at when that period expires, you have to look back at 4241. And under 4241 for Mr. Berry, even if he were an attorney general custody, the latest that that would have expired would have been in December of 2019. There was an argument that it could have been earlier, but for the purposes of this appeal, the latest would have been in December of 2019. The third category, the only category he could have been certified under were charges that were dismissed against him for reasons of his mental health that happened at the same time. And then therefore, falling on the reasonableness determination, there's clear error here because the court, I guess, did not account for the fact that the government at any point since December of 2016 could have filed a certificate. And instead, it waited until May 21st, 2020, and the government has failed to provide an exclamation for such a long delay. All right. Thank you. Thank you for accommodating my question, Judge. Thank you. We ask that you order Mr. Berry released. I want to thank you because I see that you're pro bono here and the court is especially appreciative of the good effort that you put in for your client. Thank you so much. We'll come down and greet counsel and then we'll take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Robert B. King, Matthew James Maddox